IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TAMMY ANN HARJO, )
)
Plaintiff, )
)
v. ) Case No. CIV-07-131-RAW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Tammy Ann Harjo ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on October 17, 1963 and was 42 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a cashier, home health care aide, and a cook at a McDonald's restaurant. Claimant alleges an inability to work beginning January 23, 1989 due to heel spurs, diabetes, and pain.

## Procedural History

On March 16, 2004, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's application was denied initially and upon reconsideration. On March 9, 2006, a hearing was held before ALJ Gene M. Kelly in Tulsa, Oklahoma. By decision dated September 29, 2006, the ALJ found that Claimant was not disabled during the relevant period and denied Claimant's request for benefits. On March 12, 2007, the Appeals Council denied review of the ALJ's decision. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform her past relevant work as an election board clerk at the sedentary exertional level.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper analysis at steps 4 and 5 of the sequential

evaluation; (2) failing to properly develop the record by accepting an incomplete evaluation from the consultative examiner; and (3) failing to perform a proper credibility analysis.

### Step 4 and 5 Analysis

Claimant contends the ALJ reached inconsistent decisions regarding his RFC based upon the testimony of the vocational expert. The ALJ received the testimony of A. Glen Marlowe, a certified vocational expert. The ALJ first posed a hypothetical to Mr. Marlowe as follows:

> claimant wi a 42-year old female with 12, 13 years of education and a good ability to read, to write and to use numbers. Let's assume further that the individual has the physical capacity to perform sedentary and light work, lifting and carrying to 20 pounds, to stand and walk six hours on eight and to sit six hours on eight with normal breaks and occasional stoop. They'll be no functional or mental limitations. Assume further that the individual is afflicted with symptomatology from a variety of sources that produces mild to moderate chronic pain which is of sufficient severity so as to be noticeable to her at all times, but that nonetheless she will be able to remain attentive and responsive in a work setting and can carry out normal work assignments satisfactorily. Further assume the individual takes medication for the relief of her symptomatology. The medications do not preclude her from functioning at the sedentary and light level as restricted and she will remain reasonably alert to perform required functions presented by the work setting and assume further that the individual, while functioning at the sedentary and light level as restricted, will find it necessary to change position from time to time to relieve her symptomatology.

(Tr.415)

Mr. Marlowe testified that Claimant would be able to return to

5

all of her past relevant work within the last 15 years as she performed it. He testified Claimant could not do the job of home health aide and cooking "as normally done" at a medium level. Mr. Marlowe also testified as to numerous jobs in the national and regional economies which Claimant, under the hypothetical, could perform. (Tr. 416).

The ALJ then posed a second, modified hypothetical to the vocational expert, which kept the age, educational level and basic abilities the same. He then modified the criteria as follows:

> I want to keep this individual at sedentary work, lift and carry to ten pounds. To stand and walk two hours on eight at a 30-minute interval. To sit six hours on eight at an hour interval. Occasional climb and bend and stoop. A limited squat, kneel, crouch and crawl. Occasional operate foot controls with the left lower extremity. . . . Occasional reach overhead with the left upper extremity and over-shoulder level with the right upper extremity. A slight limitation in finger, feel and grip. . . . Low light and low noise . . . . I wanna restrict her work with telephones to like with a headphone so she doesn't have to use the left ear, 'cause she says she has trouble hearing out of that ear. . . . No fine vision. . . . She can read normal print. . . . Avoid rough, uneven surfaces, unprotected heights, fast and dangerous machinery. There's still no functional restrictions. I'll keep the same assumption about pain as in hypothetical one. . . . I'll keep the same assumption about medication and its effect.

(Tr. 417-418).

Mr. Marlowe testified that Claimant could only perform her past relevant work as a clerk with the election board. The new restrictions under the ALJ's proposed hypothetical also eliminated

the previously identified jobs which required light work. (Tr. 418-419).

In his decision, the ALJ adopted the second hypothetical posed to the vocational expert as Claimant's RFC. However, the ALJ also found that "claimant could not perform any of her past relevant work." (Tr. 21). Claimant contends the opinion is internally inconsistent by adopting the RFC for which the vocational expert considered Claimant to be able to perform past relevant work but ultimately find she could not perform that work. Although somewhat inconsistent, the inconsistency works to the benefit of Claimant. Claimant would be hard-pressed to argue this beneficial inconsistency works a prejudice to her cause to receive benefits. Therefore, this Court will not reverse the ALJ's decision on this basis alone.

Claimant next challenges the ALJ's step 4 analysis by contending he failed to question the vocational expert about the differences in his testimony and the requirements of the *Dictionary of Occupational Titles*. Claimant is mistaken. The ALJ specifically inquired of the vocational expert as to whether there has "been any deviation from your testimony today, in your testimony today from the Dictionary of Occupational Titles?" (Tr. 419). The vocational expert went on to provide those differences. Reversal on this basis is unfounded.

Claimant also contends the ALJ's opinion is inconsistent

7

because he found Claimant could perform the job of telephone quote clerk when the vocational expert, in response to a hypothetical, found Claimant could not perform this job because of Claimant's limitations in the use of a telephone. (Tr. 21, 419). Claimant is correct that the ALJ should not have included the job in the step four assessment. However, reversal is not required because the ALJ included the job of food order clerk and assembly in the analysis, which the vocational expert did identify as jobs Claimant could perform.

Claimant next asserts the ALJ's second hypothetical to the vocational expert would have excluded the job of fishing reel assembler from work Claimant was capable of performing. In qualifying his second hypothetical, the ALJ addressed fingering limitations as follows:

> A slight limitation in finger, feel and grip. Now I'm not saying she can't use her hands and fingers to work with, but there'll be some diminution. She shouldn't be doing small tedious tasks with her hands and fingers. She could put her kids' bicycle together but she might not be able to play with her kids' erector set.

(Tr. 417).

In Claimant's counsel's estimation, the job of fishing reel assembler equates with playing with an erector set. The vocational expert provided the ALJ with the job of assembler after being provided with the limitation information. This Court cannot now re-weigh the evidence in the manner suggested by Claimant. <u>Hackett</u>

8

v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). The vocational expert is considered just that - an expert on matters such as job qualification and abilities - and his assessment will not be superceded by this Court's unfounded lay opinion.

In another attempt to challenge the ALJ's step five analysis, Claimant states the vocational expert failed to adequately restrict the jobs he identified Claimant could perform to jobs requiring only the use of a headset telephone. Claimant states the number of available jobs would be "far fewer than 350 order clerk jobs" if this restriction were properly considered.

The ALJ included in his hypothetical a requirement that Claimant be restricted to work "with telephones . . . with a headphone so she doesn't have to use the left ear." (Tr. 418). The vocational expert stated that, with this restriction included, Claimant should be able to do the job of order clerk. He did not specifically state that Claimant would be restricted to a headphone but he did state Claimant could do the job "based on your hypothetical and the phone, light phone use." (Tr. 419). This statement sufficiently encompasses the restrictions proposed by the ALJ. No basis exists in the record for further reduction in the order clerk jobs available to Claimant.

Claimant also contends the vocational expert failed to accommodate all of the restrictions imposed by the ALJ. Namely, the ALJ's hypothetical questioning included "low noise" without

ruling out "routine ordinary business, commercial or educational-type noise and light environments . . . ." (Tr. 417-418). The *Dictionary of Occupational Titles* considers the job of assembler as requiring "moderate noise." This Court cannot reconcile the failure of the vocational expert to include the specific restrictions imposed by the ALJ. Even with the qualification as to what the ALJ meant by "low noise," this Court cannot determine whether the assembler job would be included. However, nothing in the record has discounted Claimant's ability to perform the order clerk job. Thus, the error by the vocational expert does not rescue Claimant's claim for benefits nor require remand.

Claimant also contends the ALJ failed to determine whether the assembler job identified by the vocational expert that Claimant could perform existed in sufficient numbers. Claimant states that the vocational expert's identification of the specific job of fishing reel assembler should reduce the number of general assembler jobs significantly. Once again, Claimant attempts to reason that something cannot be without presenting evidence supporting that contention. This speculative conclusion cannot support a reversal.

### Duty to Develop the Record

Claimant asserts that ALJ failed to adequately develop the record by accepting an incomplete evaluation from the consultative

examiner. Claimant was examined by Dr. William R. Grubb on May 19, 2004. Dr. Grubb noted Claimant complained of discomfort in her feet due to heel fasciitis, diabetes, low back pain possibly due to degenerative disease of the lumbosacral spine, walking pain, hypoglycemic episodes, numbness and a sense of weakness in her hand and occasional insomnia. (Tr. 97-99).

Claimant contends Dr. Grubb failed to examine Claimant's hips and shoulders, did not assess her straight leg raising ability, or evaluate her hands and feet for sensory loss. She states Dr. Grubb also failed to test for diabetic neuropathy of the feet, and did not have Claimant attempt heel walking. Claimant also contends the ALJ should have re-contacted Dr. Grubb to complete the examination. She asserts the ALJ failed to consider the reduced grip strength found by Dr. Grubb, and mischaracterized the testing performed by Dr. Grubb.

Dr. Grubb assessed Claimant as follows:

Gait appeared normal in terms of speed, stability and safety. She may be tending to walk on her toes a little and did this some during the exam. However, she was able to stand on her toes and walk heel-to-toe effectively.

Grip strength was 4-5/5 bilaterally and somewhat inconsistent. She complained that exerting maximal strength caused her fingers to hurt. Rapid alternating movements appeared normal as did dexterity of gross and fine manipulation appeared normal as evidenced by ability to manipulate clothing and a door, and to pick up coin from a flat surface.

(Tr. 98).

The fact Claimant now believes the consultative examiner should have performed more testing does not necessarily lead to the conclusion that the ALJ's decision is not supported by substantial evidence. Dr. Grubb recognized the various conditions of which Claimant complains and, contrary to her contentions now, did examine her back, shoulders and range of motion of various joints. Dr. Grubb recognized Claimant's problems with her feet but also found that her gait and walk were effective. Moreover, the ALJ concluded Claimant suffered from the severe impairments of diabetes mellitus, problems with her legs, feet, hands, back, knees, vision, shoulders, neck, and headaches. (Tr. 17). This Court finds no inconsistencies between the evidence and the ALJ's findings. Additionally, Dr. Grubb performed adequate testing and further development of the record through consultative examination was not warranted.

Claimant states the ALJ should have ordered additional records from a clinic in Okmulgee on her depression. The only indication in the record of Claimant having any issues regarding depression was a January 20, 2005 record from a Sapulpa clinic, stating Claimant was there "to address issues of depression." (Tr. 257). Nothing in the record indicates further records exist on this issue. Claimant was to report to a clinic in Okmulgee concerning her diabetes. Id. The record was left open by the ALJ at the request of Claimant's counsel at the hearing. (Tr. 382). No

further records were submitted. Claimant has not alleged depression as a debilitating condition at any time during the pendency of these proceedings. Claimant did not mention depression as a severely impairing condition during Dr. Grubb's examination. Without some indication of the existence of additional records or their relevancy, a claimant's claim that treatment records should have been obtained is simply too general to be maintained. Madrid v. Barnhart. 447 F.3d 788, 792 (10th Cir. 2006). This Court concludes that the ALJ fulfilled his obligation to develop the record in this case.

### Credibility

Claimant contends the ALJ failed to engage in a proper credibility analysis. She argues the ALJ acknowledged some of Claimant's testimony but does not state with clarity which of Claimant's complaints he believed and which he did not. To be sure, the ALJ's statements regarding Claimant's credibility do not state expressly that a particular statement is not credible and, therefore, rejected. However, the manner in which he addresses Claimant's complaints is perhaps more effective because he discusses in some detail the statements which he believed to be supported by the evidence. (Tr. 20).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68

F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. The ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

This Court concurs with the ALJ's evaluation of the credibility of Claimant's statements concerning the level of her disability in light of the objective medical and employment evidence in the record. While Claimant's conditions are clearly debilitating, they are not disabling to the extent of preventing her from performing the identified jobs. The ALJ has sufficiently linked references to the evidentiary record with his findings of credibility to satisfy his obligation under this analysis. Thus, this Court finds no error in his evaluation of credibility.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.

The parties are herewith given ten (10) days from the date of the service of this Report and Recommendation to file with the

Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 4th day of August, 2008.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE